UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 18-cr-00419-BMC-5
                               :
      - versus -               : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
XUE WEI QU,                    : March 28, 2019
            Defendant          : 9:48 AM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Government:**        **Richard P. Donoghue, Esq.**
                               United States Attorney

                          BY: **William P. Campos, Esq.**
                               Assistant U.S. Attorney
                               **Robert Kaftal, Esq.**
                               Special Assistant
                               U.S. Attorney
                               271 Cadman Plaza East
                               Brooklyn, New York  11201


**For the Defendant:**         **Lawrence G. Mottola, Esq.**
                               Demidchik Law Firm
                               136-18 39th Avenue
                               8th Floor
                               Flushing, NY 11354


**Transcription Service:**     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                    Proceedings

1           THE CLERK:  This is matter of the United States

2    v. Xue Wei Qu, case number 18-cr-419, Criminal Cause for

3    Pleading.

4           Counsel, please state your appearances for the

5    record.

6           MR. CAMPOS:  William Campos for the United

7    States.  Also present, your Honor, is Special Assistant

8    United States Attorney Robert Kaftal.

9           Good morning.

10          THE COURT:  Good morning.

11          MR. MOTTOLA:  Good morning, your Honor.

12          For Ms. Qu, Lawrence Mottola.

13          THE COURT:  All right, good morning.

14          And we have with us this morning, a Mandarin

15   interpreter?

16          MR. CAMPOS:  Yes, your Honor.

17          THE COURT:  Would you please state your name

18   for the record?

19          THE INTERPRETER:  Patsy Ong.

20   (INTERPRETER SWORN)

21          THE COURT:  All right.  You may be seated.

22          Good morning, Ms. Xue Wei Qu.  Am I pronouncing

23   your name right?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  We're using the services of

3

Proceedings

1    an interpreter to assist you in understanding these
2    proceedings.  If at any point something is said that you
3    don't understand, please tell me, okay?
4                    THE DEFENDANT:  Yes.
5                    THE COURT:  Okay.  All right.
6            The first issue I want to deal with is your
7    consent to have me hear your plea.  You understand that
8    this is Judge Cogan's case and he is the United States
9    district judge who will sentence you and who will make
10    the ultimate decision as to whether or not to accept your
11    plea of guilty.
12            If you wish, you have the absolute right to
13    have Judge Cogan hear your plea and if you choose to do
14    that, there will be no prejudice to you.
15            On the other hand, if you wish, I will hear
16    your plea this afternoon and a transcript of these
17    proceedings will be made from the tape recording devices
18    here in the courtroom and that transcript will be given
19    to Judge Cogan at the time of your sentence and when he
20    considers whether or not to accept your plea of guilty.
21            Do you wish to give up your right to have
22    Judge Cogan hear your plea and proceed instead before me
23    this morning?
24                    THE DEFENDANT:  Yes.
25                    THE COURT:  Do you make this decision

4

                    Proceedings

1  voluntarily and of your own free will?

2          THE DEFENDANT:  Yes, it is.

3          THE COURT:  Has anyone made any threats or

4  promises to get you to agree to have me hear your plea?

5          THE DEFENDANT:  No.

6          THE COURT:  This is the consent form I believe

7  you signed earlier.

8          Have you seen this before?  Have you seen it

9  before?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Okay.  Did you discuss it with your

12 attorney?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  And is that your signature

15 there on the form?

16         THE DEFENDANT:  Correct.

17         THE COURT:  Okay.  And I will note for the

18 record that it's been signed by counsel for the defendant

19 and by the Assistant United States Attorney and I am

20 endorsing it, as well.  Is today the 27th or is it the

21 28th?

22         MR. CAMPOS:  Today is the 28th, your Honor.

23         THE COURT:  Okay.  It's dated the 27th.  I will

24 just --

25         MR. CAMPOS:  Oh.

5

Proceedings

1          THE COURT:  -- put the 28th underneath my

2     signature, so we know.  Okay, that's fine.  I just was a

3     little confused.

4          So now, before I can hear your plea, there are

5     a number of questions that I must ask you to ensure that

6     it is a valid plea.  If you don't understand any of my

7     questions, please tell me and I'll rephrase them, okay?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Will you raise your right hand,

10    please?

11    X U E   W E I   Q U ,

12         having been first duly sworn, was examined and

13         testified as follows:

14         THE COURT:  You understand that having been

15    sworn, your answers to my questions will be subject to

16    the penalties of perjury or making a false statement if

17    you don't answer them truthfully.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  What is your full name?

21         THE DEFENDANT:  My last name is Qu, and my full

22    name is Xue Wei Qu.

23         THE COURT:  Okay.  And Ms. Qu, how old are you?

24         THE DEFENDANT:  I was born October 18th, 1966.

25         THE COURT:  Okay.  And how far did you go in

6

                              Proceedings
1   school?  What's your educational level?

2            THE DEFENDANT:  High school.

3            THE COURT:  Did you finish high school?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Okay.

6            Have you had any problems communicating with

7   your attorney?

8            THE DEFENDANT:  No.

9            THE COURT:  And counsel, have you had any

10  problems communicating with your client?

11           MR. MOTTOLA:  No, your Honor.

12           THE COURT:  Do you communicate with her in

13  Mandarin or do you use an interpreter or how do you

14  communicate?

15           MR. MOTTOLA:  She speaks limited English.  I

16  use English when possible but my support staff all speak

17  Mandarin, as well, and they often will translate when we

18  have lengthy conversations.

19           THE COURT:  Okay.  So Ms. Qu, you do understand

20  some English.

21           Is that correct?

22           THE DEFENDANT:  A little bit.

23           THE COURT:  Okay.  So are you presently or have

24  you recently been under the care of either a physician or

25  a psychiatrist?

7

Proceedings

1          THE DEFENDANT:  No.

2          THE COURT:  In the last 24 hours, have you

3   taken any narcotic drugs?

4          THE DEFENDANT:  No.

5          THE COURT:  Any medicine or pills of any kind

6   in the last 24 hours?

7          THE DEFENDANT:  No.  No.

8          THE COURT:  Have you had any alcohol to drink

9   in the last 24 hours?

10          THE DEFENDANT:  No.

11          THE COURT:  Have you ever been hospitalized or

12   treated for a narcotics addiction?

13          THE DEFENDANT:  No.

14          THE COURT:  Have you ever been treated for any

15   mental or emotional problems?

16          THE DEFENDANT:  No.

17          THE COURT:  As you sit here today, is your mind

18   clear?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand what we are doing

21   here today?

22          THE DEFENDANT:  I do.

23          THE COURT:  Counsel, have you discussed the

24   matter of pleading guilty with your client?

25          MR. MOTTOLA:  Yes, your Honor.

8

Proceedings

1      THE COURT:  And does she understand the rights
2  that she will be waiving by pleading guilty?
3      MR. MOTTOLA:  Yes, your Honor.
4      THE COURT:  In your view, is she capable of
5  understanding the nature of these proceedings?
6      MR. MOTTOLA:  Yes.
7      THE COURT:  Do you have any doubt as to her
8  competence to plead at this time?
9      MR. MOTTOLA:  No.
10      THE COURT:  Have you advised her of the maximum
11  sentence and the fine that can be imposed as a result of
12  her plea here?
13      MR. MOTTOLA:  I have, your Honor.  We discussed
14  the plea agreement last week in my office, and again this
15  morning with the aid of the interpreter.
16      THE COURT:  And have you discussed with her the
17  operation of the sentencing guidelines in this case?
18      MR. MOTTOLA:  I have.
19      THE COURT:  And I take it, counsel, you are
20  retained in this matter?
21      MR. MOTTOLA:  Yes, your Honor.
22      THE COURT:  Okay.
23      THE DEFENDANT:  Correct.
24      THE COURT:  So Ms. Qu, first of all, I want to
25  make sure that you understand that you have the right to

9

Proceedings

1  be represented by an attorney in connection with these

2  charges.

3        Do you understand that?

4        THE DEFENDANT:  I understand.

5        THE COURT:  Okay.  Now I know you have retained

6  counsel in this case but if for some reason, you could

7  not afford counsel, the Court would appoint an attorney

8  to represent you.

9        Do you understand that?

10        THE DEFENDANT:  I do.

11        THE COURT:  Do you feel that you have had

12  enough time to discuss your case with your attorney?

13        THE DEFENDANT:  Yes.

14        THE COURT:  And are you satisfied to have him

15  represent you?

16        THE DEFENDANT:  Yes, I am satisfied.

17        THE COURT:  Okay.  Have you received a copy of

18  the indictment, the charges in this case?

19        THE DEFENDANT:  Yes, I have.

20        THE COURT:  Okay.  And have you discussed the

21  charges with your attorney?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Okay.  Now it's my understanding

24  that you seek to plead guilty today to Count 1 of the

25  indictment which charges you with charges you with in or

10

Proceedings

1    about and between April 2011, and December 2016, both

2    dates being approximate and inclusive within the Eastern

3    District of New York, and elsewhere, you together with

4    others did knowingly and intentionally conspire to

5    traffic in goods, specifically handbags, wallets, belts,

6    scarves, and other merchandise, and to use one or more

7    counterfeit marks on and in connection with these goods

8    in violation of U.S. law.

9              Do you understand that?

10             THE DEFENDANT:  I understand.

11             THE COURT:  First of all, let me just make sure

12   you understand what a conspiracy is.  A conspiracy is

13   simply an agreement between two or more people to do

14   something unlawful.  In this case, you're charged with

15   agreeing with others to traffic in goods that had

16   counterfeit marks.

17             Do you understand the charge?

18             THE DEFENDANT:  I do.

19             THE COURT:  And you've discussed this charge

20   with your attorney?

21             THE DEFENDANT:  Yes, we have discussed it.

22             THE COURT:  I want to make sure that you

23   understand the rights that you will be giving up if you

24   decide to plead guilty to this charge.

25             If you were to persist in pleading not guilty,

11

Proceedings

1  under the Constitution and the laws of the United States,

2  you would be entitled to a speedy and public trial by

3  jury with the assistance of counsel on the charge

4  contained in the indictment.

5           Do you understand that?

6           THE DEFENDANT:  I do understand.

7           THE COURT:  At the trial, you would be presumed

8  innocent.  The government would have to overcome that

9  presumption and prove you guilty by competent evidence

10  and beyond a reasonable doubt.

11           You would not have to prove that you were

12  innocent.  If the government were to fail, the jury would

13  have the duty to find you not guilty.

14           Do you understand that?

15           THE DEFENDANT:  I do.

16           THE COURT:  In the course of a trial, the

17  witnesses for the government would have to come to court.

18  They would have to testify in your presence.  Your

19  attorney would have the right to cross-examine those

20  witnesses for the government, to object to any evidence

21  offered by the government and he could subpoena witnesses

22  and offer testimony and evidence on your behalf.

23           Do you understand that?

24           THE DEFENDANT:  I do.

25           THE COURT:  At the trial, while you would have

Proceedings

1   the right to testify if you chose to do so, you could not

2   be forced to testify.  Under the Constitution of the

3   United States, a defendant in a criminal case cannot be

4   forced to take the witness stand and say anything that

5   could be used to show that she is guilty of the crime

6   with which they've been charged.

7            If you were to decide not to testify, the Court

8   would instruct the jury that they could not hold that

9   decision against you.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  If you plead guilty on the other

13  hand, I'm going to have to ask you certain questions

14  about what it is that you did in order to satisfy myself

15  that you are, in fact, guilty of the charge to which you

16  seek to plead guilty.  And you're going to have to answer

17  my questions and acknowledge your guilt.

18           Thus, you will be giving up that right that I

19  just described; that is, the right not to say anything

20  that could be used to show that you are guilty of the

21  crime with which you've been charged.

22           Do you understand that?

23           THE DEFENDANT:  I do.

24           THE COURT:  If you plead guilty and I recommend

25  to Judge Cogan to accept your plea, you will be giving up

13

Proceedings

1  your constitutional right to a trial and all of the other

2  rights that I have just described.  There will be no

3  further trial of any kind.  Judge Cogan will simply enter

4  a judgment of guilty based upon your guilty plea.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you willing to give up your

8  right to a trial and the other rights that I have just

9  described?

10          THE DEFENDANT:  Yes, I am giving up the -- the

11 right to a trial.

12          THE COURT:  And all of the other rights that

13 I've just described?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Now I understand there is a written

16 plea agreement.  I am marking it as Court Exhibit 1 for

17 purposes of today's proceedings.

18          Ms. Qu, could you please take a look at this

19 and tell me first of all, if you've seen the agreement

20 before?

21          THE DEFENDANT:  Yes, I have seen it before.

22          THE COURT:  Has it been read to you in your

23 language?

24          THE DEFENDANT:  The attorney had explained it

25 to me.

14

Proceedings

1          THE COURT:  Okay.  It hasn't been translated,

2   counsel?

3          MR. MOTTOLA:  I explained it to her, your

4   Honor, in my office through an interpreter, and again

5   this morning with the interpreter that is seated beside

6   my client.

7          THE COURT:  Okay.  Ms. Qu, do you understand

8   what the agreement says?

9          THE DEFENDANT:  I do.

10          THE COURT:  Okay.  And would you turn to the

11   last page, please, and tell me if that is your signature

12   there?

13          THE DEFENDANT:  Correct.

14          THE COURT:  Okay.  Does this agreement fully

15   and accurately reflect your understanding of the

16   agreement that you have with the government?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Other than the promises that are in

19   the agreement, has anyone made any other promise that has

20   caused you to plead guilty here?

21          THE DEFENDANT:  No.

22          THE COURT:  Has anyone made any promise as to

23   what your sentence will be?

24          THE DEFENDANT:  No.

25          THE COURT:  I want to briefly review with you

15

Proceedings

1    the sentencing scheme that applies here.  The statute

2    that you are accused of violating carries a minimum term

3    of imprisonment of zero years but a maximum of up to ten

4    years in prison.

5            Do you understand that?

6            THE DEFENDANT:  I do.

7            THE COURT:  Okay.  Now there are in effect what

8    are called sentencing guidelines and those guidelines are

9    merely that; a guide to help the Court determine where

10   within that zero to ten year range your sentence should

11   fall.

12           The guidelines are not mandatory but the Court

13   is required to consider the guidelines along with all

14   other relevant factors in determining what an appropriate

15   sentence for you should be.

16           Do you understand all of that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  The important thing that you must

19   understand is that until the time of sentencing when

20   Judge Cogan is going to get what is called a presentence

21   report which will be prepared by the probation department

22   following your plea here, and the judge has an

23   opportunity to hear from you, and to hear from your

24   attorney, and to hear from the government, until that

25   time, no one can promise you exactly what your sentence

Proceedings

1   will be; not your attorney, not the government's

2   attorney, not me, or even Judge Cogan until then.

3           Do you understand that?

4           THE DEFENDANT:  I do.

5           THE COURT:  Okay.  Nevertheless, I am going to

6   ask the government just to put on the record what your

7   calculation of the guideline range would be based upon

8   what we know today.

9           MR. CAMPOS:  Your Honor, based on the evidence

10  know today, the government estimates the guidelines as

11  follows:  The government estimates that there would be a

12  base offense level in this case at level 8, with a loss

13  of more than $250,000 would add 12 points to the

14  calculation, and that the infringing items were imported

15  from overseas, would add another two points to the

16  calculation and that would bring us to 22 points for the

17  offense level.

18          If we subtract two points for acceptance of

19  responsibility, that brings a range of imprisonment under

20  the guidelines, assuming the defendant falls within

21  category -- criminal history category one of 33 to 41

22  months.

23          There's an additional point subtracted if the

24  defendant pled guilty before April 2nd of this year,

25  which would mean that the offense level would be a level

17

Proceedings

1  19, and the corresponding guideline range of imprisonment

2  would be of 30 to 37 months imprisonment, again assuming

3  that the defendant falls within criminal history category

4  one.

5          That would be the government's estimate as to

6  the guidelines, your Honor.

7          THE COURT:  Okay.  And counsel, I understand

8  from the plea agreement that you have, and your client

9  have stipulated to that guidelines calculation.  Is that

10 correct?

11         MR. CAMPOS:  Yes, your Honor.

12         THE COURT:  Okay.

13         So you understand, Ms. Qu, that the guideline

14 estimate that the government just put on the record is

15 not binding on the Court or on the probation department.

16 If for some reason, the Court or the probation department

17 decides that the guideline range is different, you will

18 not be allowed to withdraw your guilty plea.

19         Do you understand that?

20         THE DEFENDANT:  I do.

21         THE COURT:  Okay.  You also understand that as

22 a result of your plea here, you face removal or

23 deportation back to your home country if you are not a

24 citizen of the United States.

25         Do you understand that?

18

Proceedings

1          THE DEFENDANT:  I do.

2          THE COURT:  Okay.  And nevertheless, you want
3  to continue to plead guilty regardless of any immigration
4  consequences, even if it means you will be deported from
5  the United States.

6              Is that what you wish to do?

7          THE DEFENDANT:  Correct.

8          THE COURT:  If for some reason you are not
9  deported immediately upon completing any jail sentence
10  that you are required to serve, you face a term of
11  supervised release for as long as you remain in this
12  country.

13              Do you know what supervised release is?

14          THE DEFENDANT:  I do.

15          THE COURT:  Okay.  Basically, once you're
16  released from jail, there may be certain restrictions
17  placed on your freedom while you are here in the United
18  States; reporting to a probation officer is one common
19  example.

20              Do you understand that?

21          THE DEFENDANT:  I do.

22          THE COURT:  Okay. The important thing here is
23  that you face a maximum term of supervised release of
24  three years, and if you violate any of the conditions of
25  supervised release, you can be sentenced up to two years

19

Proceedings

1   in prison without getting any credit for the time that

2   you previously served in prison, and without getting any

3   credit for the time that you served successfully on

4   supervised release up until the date that you committed

5   the violation.

6           Do you understand that?

7           THE DEFENDANT:  I understand.

8           THE COURT:  You also face a potential fine.

9   The maximum fine that can be imposed as a result of your

10  plea here is $2 million.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And you will also have to pay

14  restitution.

15          Does the government have some estimate of what

16  that might be at this point?

17          MR. CAMPOS:  At this point, your Honor, the

18  government doesn't have a reasonable estimate of that.

19  We have not yet obtained all of the documentation from

20  the victim companies.

21          THE COURT:  So, the amount of restitution that

22  you will be ordered to pay is something that the Court

23  will determine at a later date.

24          Do you understand that?

25          THE DEFENDANT:  I do.

20

Proceedings

1          THE COURT:  Okay.  And you understand though

2    that whatever that is, you will be required to pay it.

3          Do you understand that?

4          THE DEFENDANT:  I do.

5          THE COURT:  Okay.  You also must pay a $100

6    special assessment.

7          Do you understand that, as well?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  And then the plea agreement

10   also provides that you have consented to the entry of a

11   forfeiture money judgment in the amount of $90,000.

12         Do you understand that?

13         THE DEFENDANT:  I know.

14         THE COURT:  Okay.  And that amount must be paid

15   no later than seven days prior to your sentencing date.

16         THE DEFENDANT:  I know.

17         THE COURT:  Okay.  And you understand that

18   you've consented to this amount and that you have agreed

19   to assist the government in effectuating that payment,

20   and you're not going to file any claims or assist anyone

21   else in filing a claim to get that money.

22         Do you understand that?

23         THE DEFENDANT:  Yeah.  I'm willing to do that.

24         THE COURT:  Okay.  You understand that if you

25   don't, that's considered a breach of the plea agreement,

21

Proceedings

1  and the government could bring additional charges against

2  you.

3          Do you understand that?

4          THE DEFENDANT:  I do.

5          THE COURT:  In the plea agreement, you've also

6  agreed that you will disclose all of your assets to the

7  government on a financial statement 60 days before the

8  date of sentencing.  Again, a failure to inform the

9  government of your assets would be a breach of the plea

10  agreement.

11          Do you understand that, as well?

12          THE DEFENDANT:  I do.

13          THE COURT:  And you've given up any right that

14  you have to notice, and a jury trial on the entry of this

15  forfeiture money judgment.

16          Do you understand that, as well?

17          THE DEFENDANT:  I understand.

18          THE COURT:  Okay.  Finally, you have the right

19  to appeal your conviction if you believe that your guilty

20  plea here is somehow unlawful or involuntary or there was

21  some other fundamental defect in these proceedings that

22  was not waived by your plea.

23          You also have a statutory right to appeal your

24  sentence under certain circumstances if you believe that

25  your sentence is contrary to law.

Proceedings

1          However, in the plea agreement you've agreed

2    that you will not file an appeal or otherwise challenge

3    your conviction or your sentence so long as the Court

4    imposes a term of imprisonment of 41 months or less.

5          Do you understand that?

6          THE DEFENDANT:  I understand.

7          THE COURT:  Counsel, is there anything else in

8    the plea agreement that I need to review with the

9    defendant?

10         MR. CAMPOS:  I don't think so, your Honor.

11         THE COURT:  Okay.

12         MR. MOTTOLA:  No, your Honor.

13         THE COURT:  Ms. Qu, do you have any questions

14   that you would like to ask me about the charge or your

15   rights or the plea agreement or anything else before we

16   proceed?

17         THE DEFENDANT:  No.

18         THE COURT:  Are you ready to plead at this

19   time?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Counsel, do you know of any reason

22   why the defendant should not plead guilty?

23         MR. MOTTOLA:  No, your Honor.

24         THE COURT:  Are you aware of any viable legal

25   defense to the charges?

23

Proceedings

1          MR. MOTTOLA:  No, your Honor.

2          THE COURT:  All right.  Xue Wei Qu, what is

3   your plea to Count 2 of indictment 18-cr-419, guilty --

4   no?

5          MR. CAMPOS:  It's Count 1, your Honor.

6          MR. MOTTOLA:  Count 1.

7          THE COURT:  What did I say?  Oh, I am sorry.

8   Let me go back.  Sorry.  Let me start over again.

9          So, Ms. Xu Wei Qu, what is your plea to Count 1

10  of indictment 18-cr-419, guilty or not guilty?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  Are you making this plea of guilty

13  voluntarily and of your own free will?

14         THE DEFENDANT:  Correct.

15         THE COURT:  Has anyone threatened or forced you

16  to plead guilty?

17         THE DEFENDANT:  No.

18         THE COURT:  Has anyone made any promise to you

19  what your sentence will be?

20         THE DEFENDANT:  No.

21         THE COURT:  All right.

22         I read the charge to you a few minutes ago.  I

23  want you to tell me in your own words what happened

24  between April 2011, and December 2016, in connection with

25  this agreement that you had to traffic in these goods

24

Proceedings

1  with counterfeit marks.  Tell me what you did.

2          THE DEFENDANT:  From 2011 to 2016, I went to a

3  storage in Queens, to deliver some goods for someone

4  else, and then I also got some goods, so that I sell them

5  for myself, and I also know these bags were fake.  And I

6  also know that I am culpable also.

7          THE COURT:  Okay.  And when you said bags, you

8  mean handbags or wallets?  What was the merchandise?

9          THE DEFENDANT:  It's handbags.

10         THE COURT:  Okay.  And when you said they were

11 fake, that they had trademarks on them to indicate that

12 they were made by a particular manufacturer but you knew

13 they were not made by that.

14         THE DEFENDANT:  Correct, they were Louis

15 Vuitton, and MK handbags.

16         THE COURT:  And you knew they weren't real

17 Louis Vuitton and real MK handbags, right?

18         THE DEFENDANT:  Correct.

19         THE COURT:  Okay.  Does the government want me

20 to ask her any further questions?

21         MR. CAMPOS:  I think, your Honor, just among

22 the goods, the Louis Vuitton and Michael -- the MK goods,

23 that the defendant trafficked in, in Queens, she helped

24 others get -- unload shipping containers that were

25 imported in from China.  The reason I ask this is one of

25

Proceedings

1    the guideline points that I had brought out.

2            I believe that -- so the question is among the

3    things that she dealt with, did she also unload -- help

4    to unload and distribute the fake goods from shipping

5    containers brought in from China.

6            THE COURT:  Do you understand what the

7    government is asking.  And the government wants to know

8    if you helped other people unload shipping containers

9    from China, which contained these fake goods.

10           THE DEFENDANT:  I did not import them from

11   China.  I just went to a friend's storage to get some of

12   the goods.

13           THE COURT:  Did you know that they had come

14   from China?

15           THE DEFENDANT:  I did.

16           THE COURT:  Okay.  Does that -- I think that's

17   good enough for what you're --

18           THE DEFENDANT:  I agree.

19           THE COURT:  Okay.  All right.

20           Counsel, anything else you think I should ask

21   her?

22           MR. MOTTOLA:  No, your Honor.

23           THE COURT:  All right.

24           Based on the information given to me, I find

25   that the defendant is acting voluntarily, fully

26

Proceedings

1   understands her rights and the consequences of her plea

2   and that there is a factual basis for the plea.

3          I will, therefore, recommend to Judge Cogan

4   that he accept your plea of guilty to Count 1.

5          What happens now is that you're going to be

6   meeting with someone from the probation department to

7   prepare the presentence report that we talked about a

8   little bit earlier.  I urge you to cooperate with them,

9   obviously with counsel's advice.

10          Right now, we have a date set for sentencing of

11   July 9th at 10 a.m. before Judge Cogan.  If for some

12   reason that doesn't work for counsel or the defendant,

13   you need to get in touch with Judge Cogan's case manager

14   about the date, okay?

15          MR. MOTTOLA:  Yes.

16          THE COURT:  Okay.  And I take it that the

17   defendant is out on bond.  She is to remain out on bond

18   pending sentence.  Is that --

19          MR. CAMPOS:  The government is not making any

20   application to change the bond conditions.

21          THE COURT:  Okay.  So whatever bond conditions

22   you've been subjected to, Ms. Qu, are still in effect,

23   and you must comply.

24          Do you understand that?

25          THE DEFENDANT:  I do.

27

                          Proceedings

1          THE COURT:  Okay.  All right.  Anything else?

2          MR. CAMPOS:  Not from the government.

3          THE COURT:  All right.  Thank you.

4          MR. MOTTOLA:  Thank you.

5               (Matter concluded)

6                     -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

## C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **30th** day of **April**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.